Cite as 2021 Ark. App. 245

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-516

| | |
|---|---|
| PETE ELDRIDGE<br><br>APPELLANT<br><br><br>V.<br><br><br>PACE INDUSTRIES, LLC; DEATH<br>AND PERMANENT TOTAL<br>DISABILITY TRUST FUND; AND<br>SENTRY CASUALTY COMPANY<br>APPELLEES | **Opinion Delivered:** May 19, 2021<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G607350]<br><br><br><br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

This appeal follows the June 18, 2020 decision of the Arkansas Workers' Compensation Commission affirming and adopting the November 4, 2019 opinion of the administrative law judge (ALJ). The Commission found that appellant Pete Eldridge was entitled to medical treatment, but he failed to prove by a preponderance of the evidence that he was entitled to an anatomical impairment rating greater than 37 percent and that he had failed to prove by a preponderance of the evidence that his attorney was entitled to additional attorney's fees. The Commission had previously filed an opinion in the case on November 14, 2017, that awarded temporary total-disability benefits and fees for legal services in accordance with Arkansas Code Annotated section 11-9-715(a) (Repl. 2012). On appeal, Eldridge argues that the Commission erred by finding that he was not entitled to a 50 percent impairment rating for his compensable injury and that he was not entitled to additional attorney's fees on the rating because it "flowed directly from prior litigation

on controverted medical treatment." Because substantial evidence supports the Commission's decision, we affirm.

Eldridge worked for appellee Pace Industries, LLC (Pace), as a quality-control auditor in the mining and metal-die-casting industry. Eldridge sustained a compensable left-knee injury on July 26, 2016, for which Pace initially provided medical treatment and temporary total-disability benefits. After a hearing on March 14, 2017, the ALJ filed an opinion on June 12 that (1) ordered Pace to pay for related medical treatment after the November 14, 2016 change-of-physician order was granted; (2) ordered temporary total-disability benefits be paid for a period certain; and (3) awarded the maximum statutory allowance for attorney's fees on the benefits awarded. Eldridge appealed to the Commission, which affirmed the ALJ's decision as modified. The Commission found that Eldridge was entitled to additional temporary total-disability benefits for some of the time periods in question, but not all. Because Eldridge was awarded additional benefits, Eldridge's attorney was awarded an additional fee. Neither side appealed the Commission's decision to our court.

After a period of additional medical treatment, Eldridge underwent evaluation for the purpose of determining his anatomical-impairment rating. He obtained a rating of 50 percent that included a pain component; Pace then sought an independent medical evaluation (IME) to obtain a rating that did not include subjective complaints of pain in the rating and accepted the assessed 37 percent anatomical-impairment rating to the left lower extremity and awarded Eldridge the proper benefits associated with the 37 percent rating.

This claim came again before the ALJ on August 6, 2019, and the testimony regarding Eldridge's entitlement to additional medical treatment, entitlement to an

2

impairment rating greater than 37 percent, and entitlement to an attorney's fee was heard. Conflicting medical opinions as to the proper anatomical–impairment rating were presented during the hearing. Eldridge's preferred anatomical-impairment rating was proposed as 50 percent to the left lower extremity, and a subsequent independent rating found Eldridge to have a 37 percent anatomical-impairment rating to the left lower extremity.

In a November 4, 2019 opinion, the ALJ awarded Eldridge the requested additional medical treatment but found that Eldridge was entitled to only a 37 percent anatomical-impairment rating; accordingly, no award of attorney's fees was granted. Eldridge then filed an appeal to the Commission, which entered an order affirming and adopting the decision of the ALJ on June 18, 2020. This timely appeal followed.

The standard of review in workers'-compensation cases is well settled. On appeal, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Univ. of Ark. at Pine Bluff v. Hopkins*, 2018 Ark. App. 578, 561 S.W.3d 781. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id*. Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the

3

Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347.

When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

On appeal, Eldridge contends that he is entitled to a higher impairment rating and that the Commission erred in its June 18, 2020 opinion by not awarding him attorney's fees. Having reviewed the record before us, we are not persuaded by either argument.

Eldridge maintains that he is entitled to an impairment rating of 50 percent, which was calculated with the inclusion of subjective complaints of pain, rather than the 37 percent rating calculated without the inclusion of complaints of pain. The functional capacity evaluation ("FCE") conducted on January 3, 2019, indicated Eldridge was capable of performing his preinjury job duties conditioned upon several lifting and climbing restrictions. The evaluation of Joel Sebag that accompanied the FCE mentions complaints of pain with increased weight-bearing activities, single-leg standing and squatting/kneeling. The handwritten notes clearly assign a point value for the subjective factor of pain, and Eldridge does not dispute the fact that his subjective complaints of pain are a part of the rating.

Stuart Jones, PT, DPT, and Rick Byrd, MEd, CETT, CSCA, CSE, of Functional Testing Centers of Mountain Home conducted an impairment evaluation summary on May

4

21, 2019. Jones's determination was that Eldridge was entitled to a 37 percent impairment rating, specifically noting the exclusion of complaints of pain in the assessment in accordance with Arkansas law.

Our workers'–compensation law provides that "[a]ny determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings." Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). "Objective findings" are defined as "those findings which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(16)(A)(i) (Supp. 2019). Further, the statutes provide that "[w]hen determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain." Ark. Code Ann. § 11-9-102(16)(A)(ii)*(a)*. Also, "[f]or the purpose of making physical or anatomical impairment ratings to the spine, straight-leg-raising tests or range-of-motion tests shall not be considered objective findings." Ark. Code Ann. § 11-9–102(16)(A)(ii)*(b)*.

While medical evidence of the injury and impairment must be supported by objective findings, there is no requirement that medical testimony be based solely or expressly on objective findings. *Singleton*, *supra*. We are mindful that this court has previously held that when there are objective findings, it is improper for the Commission to reject an impairment rating for the reason that it was based in part on subjective findings. *Id*. Here, however, the Commission was confronted with two opposing medical opinions and concluded that the ALJ's decision was correct in assessing a 37 percent anatomical-impairment rating to the left lower extremity based on Jones's rating, which utilized "Table

5

64 of the American Medical Association Guides to the Evaluation of Permanent Impairment, Fourth Edition." It is within the Commission's province to reconcile conflicting evidence, including the medical evidence. *Hernandez v. Wal-Mart Assoc., Inc.*, 2009 Ark. App. 531, 337 S.W.3d 531. In finding that Eldridge was entitled to a 37 percent rating, the Commission considered the conflicting medical evidence and gave less weight to Sebag's opinion.

In this case, the Commission gave significant weight to May 2019 impairment evaluation summary conducted by Jones and Byrd. The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Greene v. Cockram Concrete Co.*, 2012 Ark. App. 691. When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Medic One, LLC v. Colbert*, 2011 Ark. App. 555, at 7. Therefore, we hold that substantial evidence supports the Commission's finding that Eldridge was entitled to the requested additional medical treatment but that he was only entitled to a 37 percent anatomical-impairment rating to the left lower extremity.

Eldridge's second appellate point is that the Commission erred by not awarding him additional attorney's fees in its June 18, 2020 opinion. In that opinion, the Commission specifically noted that "the award of attorney's fees for temporary-total-disability benefits in the Commission's November 14, 2017 opinion shall not be disturbed." In his brief, Eldridge admits "[t]he respondents continued to pay benefits to the appellant, including medical treatment and indemnity." After receiving the anatomical-impairment rating assessment of 50 percent from Sebag, Pace continued paying indemnity benefits and sought

an independent impairment-rating evaluation. Pace accepted the 37 percent rating from Stuart Jones and began paying benefits on the basis of that rating.

At no time did Pace controvert Eldridge's entitlement to an anatomical-impairment rating or deny that benefits would be paid on the basis of a valid rating. The applicable statute in this case is Arkansas Code Annotated section 11-9-715, which provides in relevant part:

> (a)(1)(A) Fees for legal services rendered in respect of a claim shall not be valid unless approved by the Workers' Compensation Commission.

> (B) Attorney's fees shall be twenty-five percent (25%) of compensation for indemnity benefits payable to the injured employee or dependents of a deceased employee. Attorney's fees shall not be awarded on medical benefits or services except as provided in subdivision (a)(4) of this section.

> . . . .

> (2)(B)(i) In all other cases whenever the Commission finds that a claim has been controverted, in whole or in part, the commission shall direct that fees for legal services be paid to the attorney for the claimant as follows: One-half (1/2) by the employer or carrier in addition to compensation awarded; and one-half (1/2) by the injured employee or dependents of a deceased employee out of compensation payable to them.

> (ii) The fees shall only be allowed on the amount of compensation for indemnity benefits controverted and awarded.

> (iii) However, the commission shall not find a claim has been controverted if the claimant or his representative has withheld from the respondent during the period of time allotted for the respondent to determine its position any medical information in his possession which substantiates the claim.

> (C)(i) Whenever the commission finds a claim has not been controverted but further finds that bona fide legal services have been rendered in respect to the claim, then the commission shall direct the payment of the fees by the injured employee or dependents of a deceased employee out of the compensation awarded.

> . . . .

7

(4) Medical providers may voluntarily contract with the attorney for the claimant to recover disputed bills, and the attorney may charge a reasonable fee to the medical provider as cost of collection.

Ark. Code Ann. § 11-9-715(a)(1)(A) and (B), (a)(2)(B)(i)–(iii), (a)(2)(C)(i), and (a)(4).

A fee is payable from the employer or carrier only if benefits are controverted and awarded. *Burton v. Chartis Claims, Inc.*, 2014 Ark. App. 47, at 5. Further, the statute makes clear that an attorney's fee cannot be obtained on medical benefits unless an appellant's counsel contracted with the provider to recover disputed bills. *Id.*

The record reflects Pace's acceptance of the 37 percent impairment rating—demonstrating that Eldridge's entitlement to permanent disability benefits was not controverted. Timely voluntary acceptance and payment of an impairment rating lower than Eldridge's preferred rating does not constitute controversion under the law, and as such, Eldridge's attorney is not entitled to a fee. The Commission's determination that no additional attorney's fees be awarded is supported by substantial evidence as Eldridge is not entitled to attorney's fees on uncontroverted benefits. Accordingly, the Commission did not err in its determination and we affirm.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Steven McNeely DBA Attorney at Law*, by: *Steven R. McNeely*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *Laura J. Pearn*, for appellees Pace Industries and Sentry Casualty Company.