Twyla BRYANT *v.* STAFFMARK, INC.

CA 01-522                                    61 S.W.3d 856

Court of Appeals of Arkansas
Division IV
Opinion delivered November 28, 2001
[Petition for rehearing denied January 9, 2002.]

*Lane, Muse, Arman & Pullen,* by: *Shannon Muse Carroll,* for appellant.

*Barber, McCaskill, Jones & Hale, P.A.,* by: *Robert L. Henry, III,* and *Wendy S. Wood,* for appellee.

L ARRY D. VAUGHT, Judge. This appeal is from a decision of the Arkansas Workers' Compensation Commission upholding the ruling of the Administrative Law Judge. Appellant argues that the ALJ's refusal to allow appellant's rebuttal testimony during her benefit hearing was an abuse of discretion that amounts to reversible error. We agree.

Appellant Twyla Bryant worked as a housekeeper at the Arlington Hotel through Staffmark, Inc. Ms. Bryant's duties included cleaning restrooms, vacuuming, mopping, dusting, cleaning windows, and taking out the trash. She would begin work each day on the seventh floor and work her way down to the first floor, where she took'out the trash from the front desk and then went to the basement to clean the women's locker room. On May 18, 2000, appellant arrived for work at 10:00 p.m. and began cleaning on the 7th floor. She took her scheduled lunch break between 12:00 and 12:30 a.m. By 3:00 a.m., Ms. Bryant had progressed to her cleaning

assignments located on the first floor. At this time she began down a metal staircase from the first floor to the basement. As she went down the stairs, she fell and injured her neck and left shoulder. The purpose of Ms. Bryant's trip to the basement was to smoke a cigarette.

Appellant was treated at St. Joseph's Regional Health Center and received follow-up care with Dr. Roy Puen. Ms. Bryant's medical records include various objective findings of injury, including a "contusion paracervical area with trapezius and paracervical strain." The parties stipulated that an employment relationship was in existence at the time of her injury. Appellant was off work (following the May 19, 2000, incident) until June 14, 2000, when she was released from her physician's care to return to work without restrictions.

Appellant filed a claim for workers' compensation benefits, contending that she suffered a compensable injury when she fell at work on May 19, 2000. In response, appellee argued that appellant's injury was not sustained during the course of her employment and alternatively, that appellant's injury did not occur at a time when she was performing employment services.

A pre-hearing order was filed on July 31, 2000. The order directed the parties that the names and the subject matter of the testimony of all witnesses, including possible rebuttal witnesses, "shall be furnished to opposing counsel and this Commission no later than seven days before the date of the hearing." The hearing was held on September 22, 2000.

During the hearing, appellant testified that she was instructed to "space out" her work by taking frequent breaks,[1] therefore she would "go take a smoke break, go sit down, go do something," and that she was paid for all of her breaks, except her scheduled lunch break. She further testified that smoking was permitted in only one location — the Captain's Tavern, in the hotel's basement. She also testified that while she was on paid breaks she was always subject to being recalled to duty, and had in the past been asked to leave her smoke break to recheck a bathroom on the second floor.

---

[1] Appellant testified that if she continuously cleaned (without spacing her work out), beginning at the start of her 10:00 p.m. shift, her duties would have been completed by 3:30 or 4:00 a.m.

After appellant's initial testimony, she called Tomislav Tomic as a corroborating witness. Mr. Tomic testified that he had worked at the Arlington for seven and one-half years and that he had trained appellant. He also testified that he only "partially" understood English. Following Tomic's testimony, appellant called Janet Meeks in an attempt to "clarify some of the ideas or concepts that I cannot adequately express to Mr. Tomic." Appellee objected, arguing that Meeks was not listed as a witness in violation of the pre-hearing order.

The ALJ sustained the objection, and appellant proffered the testimony of Meeks. Meeks testified that she was the Arlington's assistant-night manager, and that she supervised the housecleaning crew "in a roundabout way." She further testified that the night housekeeping crew was scheduled from 10:00 p.m. to 6:30 a.m., to be available in case a need for a bed change or room cleaning arose. In sum, Meeks testified that part of the evening cleaning staff's responsibility was simply to be available. After proffering this testimony of Meeks, appellant rested.

Appellee then called Reba Crenshaw as a witness. Ms. Crenshaw testified that she was an employee of Staffmark, and that appellant was not paid for lunch breaks, and "as to any time she took for a smoke break when she worked at the Arlington, to the best of my knowledge we do not pay for breaks. That is true for all employees of Staffmark not just the people like Ms. Bryant here who work at the Arlington." At this point in the hearing, appellant once again offered testimony of Janet Meeks, this time as a rebuttal witness.[2] Appellant argued that, unlike witnesses presented in her case-in-chief, no notice is required for rebuttal witnesses. Appellee objected, arguing that the pre-hearing order also required a seven-day notice for rebuttal witnesses. The ALJ sustained the objection, ruling:

> As far as I know, in our proceedings, a witness is a witness, and I don't, I haven't been asked in a long time, but certainly I do not allow rebuttal witnesses because I think it allows for a lot of unfairness that the Rule is trying to avoid, and I don't allow it for either side. So, I will not allow hers or other testimony to come in unannounced, in violation of the Seven-Day Rule because they are, quote, "a rebuttal witness."

---

[2] At no point in the hearing did appellee or the ALJ consider the issue of Ms. Meeks's status as a "true" rebuttal witness.

Ms. Meeks proffered the following rebuttal testimony: "To the best of my knowledge the housekeeping employees are not required to sign out for the occasional smoke breaks that they take. They are not required to clock in or clock out or sign out." Ultimately, the ALJ denied appellant's claim for benefits after a determination that appellant was not engaged in employment services during the time of her injury, and his decision was adopted by the Full Commission.

■ The Workers' Compensation Commission has broad discretion with reference to admission of evidence, and its decision will not be reversed absent a showing of abuse of discretion. *Brown v. Alabama Elec. Co.*, 60 Ark. App. 138, 959 S.W.2d 753 (1998). The Commission is given a great deal of latitude in evidentiary matters; specifically, Arkansas Code Annotated section 11-9-705(a) (Repl. 1997) states that the Commission "shall not be bound by technical or statutory rules of evidence or by technical or formal rules of procedure." Additionally, the Commission is directed to "conduct the hearing in a manner as will best ascertain the rights of the parties." Ark. Code Ann. § 11-9-705(a); *Clark v. Peabody Testing Servs.*, 265 Ark. 489, 579 S.W.2d 360 (1979).

■ In the case at bar, the Commission affirmed the ALJ's terse pronouncement that he does "not allow rebuttal witnesses," despite the fact that the rebuttal witness was present for cross-examination and no prejudice would have resulted from her testimony. It is impossible to reconcile this harsh and arbitrary decision with the statutory provisions freeing the Commission from the formal and technical rules of evidence.

■■ In our view, it is clear that the Commission should be more liberal with the admission of evidence, rather than more stringent. It is neither fair nor logical to summarily disallow rebuttal testimony, nor is it appropriate to require (as stated in the pre-hearing order) that all possible rebuttal witnesses be revealed seven days prior to the hearing. Such an order is inconsistent with a large body of law that does not require notice for rebuttal witnesses. *See Parker v. State*, 268 Ark. 441, 597 S.W.2d 586 (1980) (citing *Perkins v. State*, 258 Ark. 201, 523 S.W.2d 191 (1975)). It also defies common sense. It is impossible for one to anticipate seven-days prior to a hearing all testimony that may need rebutting. Therefore, we conclude that the ALJ's seven-day notice requirement for all possible rebuttal witnesses, and his ruling espousing a refusal to even consider the possibility of rebuttal testimony, amounts to an abuse of discretion.

■ ■ Further, we cannot say that this erroneous evidentiary ruling is harmless error. This hearing was held prior to the important and controlling case, *Matlock v. Blue Cross & Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001). In *Matlock*, we outlined the guidelines for conducting an "employment services" test. This court held that:

> [N]o single feature of the employment relationship is determinative of whether conduct falls within the meaning of "employment services." However, the factors that may be relevant in reaching that determination include:
>
> 1. Whether the accident occurs at a time, place, or under circumstances that facilitate or advance the employer's interests;
>
> 2. Whether the accident occurs when the employee is engaged in activity necessarily required in order to perform work;
>
> 3. Whether the activity engaged in when the accident occurs is an expected part of the employment;
>
> 4. Whether the activity constitutes an interruption or departure, known by or permitted by the employer, either temporally or spatially, from work activities;
>
> 5. Whether the employee is compensated during the time that the activity occurs;
>
> 6. Whether the employer expects the worker to cease or return from permitted non-work activity in order to advance some employment objective.

*Id.* at 339-40, 49 S.W.3d 138-39 (citations omitted). The *Matlock* court further noted that the list does not include all of the factors that may conceivably be considered in a given case, and in some cases it may not be necessary for the Commission to consider all of these factors. However, it is the Commission's responsibility as trier of fact to determine whether and to what degree these or other factors demonstrate that the accident occurred when the employee was engaged in the primary activity that he or she was hired to perform or in incidental activities inherently necessary for the performance of the primary activity. On appellate review, our duty is to determine whether the Commission's decision in a given case is supported by substantial evidence. *Matlock, supra.*

■ In the present case, the proffered testimony of Ms. Meeks concerns a factor emphasized in *Matlock*. The proffered rebuttal testimony directly contradicted the testimony of the appellee's witness regarding whether or not appellant was compensated during her frequent breaks. Considering the *Matlock* court's reliance on *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999) (emphasizing the employee's pay status during her break), coupled with its disclaimer that any of the factors alone may be sufficient to establish that an "employment service" is being performed, there is sufficient justification for reversal.

Reversed and remanded for consideration consistent with this opinion.

HART and BAKER, JJ., agree.